# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| AL J. EVANS, JR. | § | |
| | § | |
| v. | § | Case No. 4:08cv297 |
| | § | (Judge Mazzant) |
| JOHN E. POTTER, Postmaster General, | § | |
| U.S. Postal Service | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant John E. Potter's Motion for Summary Judgment (Dkt. #39). Having considered the motion, and the response thereto, the Court finds that the motion should be granted.

### Background

Al J. Evans, Jr., Plaintiff, applied for a job as Rural Carrier Associate at the McKinney, Texas, post office on July 20, 2004. On his application, Plaintiff did not note that he was a disabled veteran. On July 23, 2004, the McKinney postmaster interviewed Plaintiff. The interview went well and Plaintiff was offered the position of rural carrier, but the offer was conditioned upon Plaintiff's ability to pass a pre-employment medical assessment. Under Postal Service policy, a medical assessment is mandatory for all career and non-career appointments.

On October 28, 2004, Plaintiff completed the medical questionnaire. The medical history questionnaire asks a number of medical screening questions. The computer system processes the prospective employee's responses to the questionnaire and flags any medical issues that need to be further reviewed by the medical unit. In Plaintiff's case, the computer flagged a number of medical issues. The computer flagged that Plaintiff had a ten-percent VA disability rating for patellofemoral syndrome (knee pain) for his left knee, another ten-percent rating for the same condition of his right knee, and a ten-percent rating for lumbosacral strain. On the same day, Occupational Health Nurse

Claude Adair interviewed Plaintiff to get further information about the medical conditions identified by the questionnaire responses. Plaintiff told Adair that his knee and back problems started in May 2000, that he had been seen at the VA medical center for pain in the left shoulder and knees a "couple of weeks ago," and that his back pain extends to his left shoulder about once a month. Adair noted that Plaintiff reported that he did not have any mental or physical conditions that would interfere with his usual daily activities.

Based upon these responses, Adair told Plaintiff to bring forms to his treating physicians to fill out concerning the medical conditions identified by the medical questionnaire and interview. Plaintiff brought the forms to the VA medical center and had them completed by a Physician Assistant. The Physician Assistant noted, with respect to Plaintiff's knee problems, that he was being treated with non-steroidal anti-inflammatory drugs as needed and that he had rehabilitation appointment pending. With respect to Plaintiff's back, it was noted that Plaintiff's treatment plan included physical therapy and spinal injections.

After reviewing the VA's responses on the forms as well as Plaintiff's medical records, Dr. Patricia Auerbach, the Medical Officer for the Postal Service's Dallas District at that time, notified Plaintiff on November 23, 2004, that he was scheduled for a focused physical examination with Dr. Arthur Sarris, a private orthopedic specialist.

On December 2, 2004, Plaintiff was examined by Dr. Sarris. Dr. Sarris noted that Plaintiff's VA medical records from October 2004 showed that he had complained of severe pain in the thoracolumbar area, for which he was treated with physical therapy and injections. Plaintiff told Dr. Sarris that his back pain would flare up with different types of activities. Plaintiff also reported to

Dr. Sarris that his knee pain comes and goes if he engages in over-excessive activity. Considering Plaintiff's medical history and the functional requirements for the rural carrier position, Dr. Sarris concluded that Plaintiff would be high risk and thus was not medically qualified for the position.

On December 2, 2004, Dr. Sarris sent his medical assessment determination to the Postal Service's medical unit, via facsimile. The next day, Dr. Auerbach signed off on Dr. Sarris's medical determination. On December 7, 2004, Adair entered the determination into the computer database, that Plaintiff was a high risk/not medically qualified. The medical unit sent its medical determination to the human resources office, which makes the ultimate hiring decision.

On February 9, 2005, Terrie Dixon, a human resources representative, informed Plaintiff via telephone that he was found medically unsuitable for the rural carrier position and he would not be hired for that position. The next day, Michelle Washington, the acting manager of personnel services, sent Plaintiff a letter informing him that, after review of his medical assessment, the Postal Service found him medically unsuitable.

On February 23, 2005, Plaintiff filed a pre-complaint counseling form with the Postal Service EEO office, alleging disability discrimination. Plaintiff noted on his form that he had a thirty percent service-connected disability rating. Plaintiff informed the Postal Service medical unit of the rating as part of his medical assessment, but the medical unit did not share the information with the personnel department due to the medical file being restricted. The personnel officials who made the decision not to hire Plaintiff did not know about Plaintiff's disability rating when that decision was made. The personnel officials found out about the disability rating at a mediation that took place in March 2005.

After finding out about Plaintiff's disability rating at the March 2005 mediation, Michelle Washington sent Plaintiff's medical file to Dr. Larry E. Bradley, the then Medical Director for the Postal Service's Southwest Area, so that he could make a tentative medical suitability determination based on clinical findings from Plaintiff's physical examination results and medical files. After reviewing Plaintiff's medical records, including Dr. Sarris's December 2, 2004 report, Dr. Bradley agreed with Dr. Sarris that Plaintiff was medically unsuitable to perform the rural carrier position. Dr. Bradley found that "as the job of Rural Carrier Associate [] requires doing arduous tasks involving repetitive use of the back and lower extremities, the risk to this applicant of incurring an injury or aggravation of his condition by attempting to fulfill the requirements of this job is significant, and therefore, inadvisable."

On April 8, 2005, the Postal Service sent Plaintiff a letter notifying him that his case was being reviewed by OPM[1] and that he was entitled to submit any relevant information to OPM within fifteen days. On April 28, 2005, OPM sent Plaintiff a letter stating that "we have carefully reviewed all of the medical documentation and related materials and conclude that your medical condition presents an unacceptable safety and health risk and is likely to adversely affect your ability to perform the full range of duties required for the position."

On August 12, 2008, Plaintiff filed his complaint against Defendant, asserting that failure to hire him as a rural carrier resulted in a violation of the Rehabilitation Act. On September 27, 2010, Defendant filed a motion for summary judgment (Dkt. #39). Defendant asserts that the disability

---

[1] Under Postal Service policy, if a veteran with a thirty percent or higher disability rating is found medically unsuitable for a position, the veteran has a right to have the decision reviewed by OPM in Washington, D.C.

4

claim should be dismissed because Plaintiff was not disabled within the meaning of the Act and because, even if he were, there is no evidence that the Postal Service made the decision not to hire him because of his alleged disability. On November 4, 2010, Plaintiff filed a response (Dkt. #45).

## Summary Judgment Standard

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas*

*Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

## Analysis

An action alleging disability discrimination against a federal agency must be brought under the Rehabilitation Act. 29 U.S.C. § 794. The Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be ... subjected to discrimination under any program or activity receiving Federal financial assistance ... or activity conducted by the United States Postal Service." *Id.*

Plaintiff's disability discrimination claim is analyzed under the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first create a presumption of unlawful discrimination by presenting evidence of a prima facie case. After making a prima facie showing, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Milton v. Nicholson*, 256 F. App'x at 655, 657 (quoting *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir.2000)). If the employer can articulate such a reason, the inference of discrimination falls away, and the burden shifts back to the plaintiff to establish that his employer's proffered reason is merely a pretext for discrimination. *Id.*

Relief under the Rehabilitation Act requires Plaintiff to prove a prima facie case that (1) he is an "individual with a disability"; (2) who is "otherwise qualified"; (3) who worked for a "program or activity receiving Federal financial assistance"; and (4) that he was discriminated against "solely

by reason of his disability." *Hileman v. City of Dallas, Tex.*, 115 F.3d 352, 353 (5th Cir.1997); *McKay v. Johanns*, 265 F. App'x 267, 268 (5th Cir.2008).

A claim under the Rehabilitation Act requires that Plaintiff make a showing that he is an individual with a disability. *Hileman*, 115 F.3d at 353. "An individual with a disability is any person who (1) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Id.* "A physical or mental impairment that affects the claimant's ability to engage in a narrow range of jobs only or a particular job alone does not substantially limit one or more major life activities." *Id.* The Act defines an individual with a disability as a person who has a physical or mental impairment that "substantially limits one or more of such person's major life activities." *Id.* According to the regulations, major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working ." 29 C.F.R. § 1630.2(I).

Defendant asserts that Plaintiff has no evidence that he had an impairment that substantially limited a major life activity at the time the Postal Service made the decision not to hire him. "A physical or mental impairment that affects the claimant's ability to engage in a narrow range of jobs only or a particular job alone does not 'substantially limit' one or more major life activities." *Hileman*, 115 F.3d at 353 (citing *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir.1993)). "The inability to work at the specific job of one's choosing is not a substantial limitation on a major life activity." *Id.* at 354. (Citations omitted). "Whether an impairment substantially limits a plaintiff's employment potential depends upon the number and types of jobs from which he is

disqualified, the geographic area to which he has reasonable access, and his employment qualifications." *Id.*

The Court agrees that there is no evidence that Plaintiff had an impairment that substantially limited a major life activity at the time of the decision not to hire Plaintiff. Plaintiff always claimed that he was not disabled. Plaintiff stated in answering the affidavit questions with his EEO Affidavit that "[m]y conditions do not prevent major life activities; however the agency regarded my conditions as such by requiring documentation from the VA and finding me medically disqualified." Plaintiff answered another question: "Again I do not have impairment that prevents major life activities. My conditions are not severe enough to be considered a major disability." Plaintiff also claims that he can lift heavy boxes and packages, bend, stoop, crawl, crouch, raise his arm, and walk for extended periods of time with ease. The Court agrees with the Defendant that there is no evidence that Plaintiff was considered disabled under the Act at the time of the decision not to hire him. *See Spencer v. U.S. Postal Serv.*, Civ. Action No. 08-cv-02249-KLM-MEH, 2009 WL 5217981 *6 (D.Colo., Dec.29, 2009).[2] There is no evidence that Plaintiff's physical limitations substantially limit a major life activity. The Court finds that summary judgment should be granted because no reasonable jury could find that Plaintiff is disabled as defined by the Rehabilitation Act.

Defendant next moves for summary judgment asserting that the Postal Service did not regard Plaintiff as disabled. To be "regarded as disabled," Plaintiff must show that he either (1) "[h]as a

---

[2] Although not argued by Plaintiff, the fact that he has a thirty-percent disability rating does not establish that he is disabled for purposes of the Rehabilitation Act. *See* 29 C.F.R. § 1630.2(k); *Mosley v. Potter*, No. H-08-483, 2009 WL 3672830 *4 (S.D. Tex. Nov. 2, 2009).

physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation," (2) "[h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment," or (3) "is treated by a covered entity as having a substantially limiting impairment." 29 C.F.R. § 1630.2(1).

There is no evidence that anyone employed by Defendant regarded Plaintiff as disabled under any of these tests. The only evidence before the Court shows that, based upon the independent medical evaluation done by the private orthopedic specialist and Plaintiff's medical history, the Postal Service was concerned only with Plaintiff's ability to perform the rural carrier position. Plaintiff also concedes that the Postal Service never told him that he could not do some other type of job with the Postal Service. The summary judgment evidence demonstrates that the Postal Service concluded that he could not perform the position as rural carrier without posing a substantial risk of harming himself. *See Mason v. United Air Lines, Inc.*, 274 F.3d 314, 317 (5th Cir. 2001). Plaintiff failed in his burden to offer any evidence to controvert Defendant's evidence and thereby raise a fact issue.

Defendant also moves for summary judgment on the element that Plaintiff does not have a record of disability. To have a record of impairment, Plaintiff must either have "a history of" an impairment that substantially limits one or more major life activities or he must have "been misclassified as having" the same. 29 C.F.R. § 1630.2(k); *Blanks v. Southwest Bell Communications, Inc.*, 310 F.3d 398, 402 (5th Cir. 2002). In this case, Plaintiff has never pleaded or contended that

9

he had a record of disability. Here, Plaintiff has failed to show his knees or back problems have substantially impaired a major life activity. Moreover, Plaintiff's thirty-percent disability rating does not qualify as a record of disability. *See* 29 C.F.R. § 1630.2(k); *Mosley v. Potter*, No. H-08-483, 2009 WL 3672830 *4-5 (S.D. Tex. Nov. 2, 2009); *Emerick v. Norfolk S. Ry. Co.*, No. CIVA 3:03-266, 2006 WL 3692595 *9 (W.D. Pa. Dec. 12, 2006). While the evidence indicates a history of knee and back problems, it fails to create a genuine issue of material fact that Plaintiff is disabled under the Rehabilitation Act. Thus, Plaintiff has failed to establish a prima facie case of disability discrimination, and Defendant is entitled to summary judgment on Plaintiff's claim.

Even if Plaintiff established a prima facie case, Plaintiff has failed to offer evidence to rebut the Postal Service's legitimate, non-discriminatory reason for not hiring Plaintiff. The evidence establishes that the Postal Service decided not to hire Plaintiff as a rural carrier because it was determined, based upon the medical evidence, that Plaintiff was not medically qualified for that position. Plaintiff disagrees with that decision, but his subjective belief that he suffered an adverse employment action as a result of discrimination is not enough to survive a motion for summary judgment. *See Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996). Plaintiff offers no evidence that the reason the Postal Service gave for not hiring him was a pretext for unlawful discrimination. Plaintiff does not dispute that the Postal Service relied upon Dr. Sarris's independent evaluation in finding that he was medically unsuited to be a rural carrier. Plaintiff's disagreement with Dr. Sarris's medical opinion is not enough to raise a fact question. Therefore, Plaintiff's claim for violation of the Rehabilitation Act should be dismissed.

Defendant also moves to dismiss Plaintiff's claim for intentional infliction of emotional distress. Assuming that Plaintiff asserted such a claim, Defendant moves to dismiss this claim on the following grounds: (1) this claim can only be brought against the United States under the Federal Torts Act and Plaintiff has failed to exhaust his administrative remedies, requiring dismissal for lack of subject matter jurisdiction; (2) a claim for intentional infliction of emotional distress under Texas law requires such claims to be filed within two years, thereby barring any claim based upon statute of limitations; and (3) the conduct does not involve the type of extreme and outrageous conduct that would support such a claim. The Court agrees that the Plaintiff must exhaust his administrative remedies before asserting an intentional tort against the United States. Therefore, the claim for intentional infliction of emotional distress, assuming Plaintiff is actually asserting such a claim, should be dismissed without prejudice because the Court lacks subject matter jurisdiction over the claim. *See Caffey v. Heller First Fin. Capital Corp.*, 281 F. App'x 315, 316 (5th Cir. 2008); 28 U.S.C. § 2675(a).

It is therefore ORDERED that the Defendant's Motion for Summary Judgment (Dkt. #39) is hereby GRANTED and Plaintiff's claim for violation of the Rehabilitation Act is DISMISSED with prejudice and Plaintiff's claim for intentional infliction of emotional distress is DISMISSED without prejudice.

**SIGNED this 20th day of December, 2010.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE